IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELVIS BENSON, | ) | |
| | ) | No. 08 C 2346 |
| Plaintiff, | ) | |
| | ) | Judge Manning |
| v. | ) | |
| | ) | Magistrate Judge Valdez |
| ERIC ECKHORN, GREGORIO ANDERSON, | ) | |
| UNKNOWN OFFICERS, and the | ) | |
| CITY OF CHICAGO, | ) | Jury Demand |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS ERIC ECKHORN'S AND GREGORIO ANDERSON'S MOTION TO DISMISS COUNT VI OF PLAINTIFF'S COMPLAINT OR IN THE ALTERNATIVE 12(e) MOTION FOR MORE DEFINITE STATEMENT

Defendants Eric Eckhorn and Gregorio Anderson (collectively, "Defendant Officers"), by and through their attorney, Marc J. Boxerman, senior counsel, respectfully move this Honorable Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Count VI of Plaintiff's complaint for failure to state a cognizable claim under the Equal Protection Clause of the Fourteenth Amendment. In the alternative, Defendant Officers move for a more definite statement of Plaintiff's Equal Protection Class-of-One Claim pursuant to Federal Rule of Civil Procedure 12(e). In support of their motion, Defendant Officers submit the following memorandum.

## INTRODUCTION

Plaintiff seeks remedies pursuant to the Civil Rights Act as codified under 42 U.S.C. § 1983. The lawsuit stems from an alleged violation of Plaintiff's Fourth Amendment right to be free from unreasonable seizures. *See* Complaint ¶¶ 1, 5. Plaintiff's complaint contains 49 numbered paragraphs and alleges nine counts: Count I "§ 1983 False Arrest"; Count II "False

Arrest-State Claim"; Count III "Malicious Prosecution-State Claim"; Count IV "§ 1983

Conspiracy Claim"; Count V "Conspiracy Claim-State Law", Count VI "§ 1983 Equal

Protection-Class of One"; Count VII "*Monell*"; Count VIII "745 ILCS 10/9-102 Claim Against

the CITY OF CHICAGO"; and Count IX "Supplementary Claim for *Respondeat Superior*."

Counts I through VI, are directed against the Defendant Officers.  The remaining counts are

directed against the City of Chicago.  Nowhere in the complaint does Plaintiff articulate any

specific conduct taken by any particular named defendant.  Instead, Plaintiff simply alleges

everything against "DEFENDANT OFFICERS."

According to Plaintiff, "[o]n or about April 29, 2007, some or all of the DEFENDANT

OFFICERS were engaged in an unreasonable seizure of the PLAINTIFF.  This conduct violated

the Fourth Amendment to the United States Constitution."  Complaint ¶ 5.  Plaintiff further

alleges, "[a]t all times material to this complaint, the DEFENDANT OFFICERS were acting

under color of state law, ordinance and/or regulation, statutes, customs and usages of the CITY

OF CHICAGO." *Id.* ¶ 4.  The complaint alleges that Officers Anderson and Eckhorn and

unknown officers "came into physical contact" with plaintiff but in no way alleges what that

physical contact is. *Id.* ¶¶ 11-13.  All that can be gleaned from the complaint is that Plaintiff

alleges one or more of the police officers arrested him, *id.* ¶ 5, when he had not committed any

criminal offense, *id.* ¶¶ 7-8, and that the "DEFENDANT OFFICERS" conspired to falsely arrest

Plaintiff, agreed not to report each other for the false arrest, and to generate false documentation

to cover-up the false arrest, *id.* ¶ 14.  The complaint does not specify which actions where

allegedly undertaken by which defendants and does not even specify with what crime any of

these defendants arrested or charged him.

With respect to his equal protection claim, Plaintiff alleges "[t]he actions of the DEFENDANT OFFICERS, in engaging in the above referenced cover-up, which led to the generation of false documentation and criminal charges to be lodged against PLAINTIFF, demonstrate that the DEFENDANT OFFICERS failed in their duty to enforce the laws equally and fairly against the Plaintiff, therefore violating the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution." *Id.* ¶ 16.  Plaintiff further alleges:

> With regard to an Equal Protection Claim, PLAINTIFF was a "Class of One." In that regard, PLAINTIFF was treated with ill will and/or discriminated against with no rational basis. PLAINTIFF was intentionally treated differently as a result of witnessing police misconduct attributable to the DEFENDANT OFFICERS.  The DEFENDANT OFFICERS acted with discriminatory intent by treating PLAINTIFF differently and trying to cause further injury to PLAINTIFF by generating false evidence against PLAINTIFF. Further, PLAINTIFF was similarly situated to other individuals who interact with Police Officers that are not falsely arrested.

*Id.* ¶ 22.  The complaint provides no additional clarification of this claim and alleges no additional facts to support it.

## PURPOSE OF THE EQUAL PROTECTION CLASS-OF-ONE CLAIM

The class-of-one theory of equal protection liability principally derives from the Supreme Court's *per curiam* decision in *Village of Willowbrook v. Olech* 528 U.S. 562 (2000).  That case arose out of a dispute between a property owner and the village over the requirements for an easement. *Olech*, 528 U.S. at 563.  The property owners, not members of any suspect class or group, claimed that the village's demand upon them was greater than every other property owner and as such the demand deprived them of the equal protection of the law. *Id.* at 564.  The Supreme Court held that an equal protection "class of one" claim may proceed without membership in a suspect class or group where the "plaintiff alleges that she has been

intentionally treated differently from others similarly situated and *that there is no rational basis for the difference in treatment.*" *Olech*, 528 U.S. at 564 (emphasis added).

The Seventh Circuit has struggled to define the precise contours of a class-of-one cause of action. *See Lauth v. McCollum*, 424 F.3d 631, 632-33 (7th Cir. 2005) (J. Posner); *see also Bell v. Duperrault*, 367 F.3d 703, 709-11 (7th Cir. 2004) (J. Posner concurring) (noting the lack of clarity following the *Olech* decision and the varying lines of authority set forth by the several circuits). In attempting to reign in the potential breadth of the class-of-one claim, the Seventh Circuit established that where a rational or legitimate reason may be hypothesized, an equal protection "class of one" claim fails as a matter of law. *McCollum*, 424 F.3d at 634 (holding that a class-of-one plaintiff must surpass rational scrutiny and negative any reasonably conceivable state of facts that could provide a rational basis for the government action). The complained of action "only fails rational basis scrutiny if no sound reason for the action can be hypothesized." *Id.* at 634. (citations omitted). The Seventh Circuit sanctioned the disposal of class-of-one claims in Rule 12(b)(6) motions "[s]ince hypothesis is not proof, this test that we have articulated can often be applied in advance of discovery." *Id.* (citations omitted).

Recognizing the theoretical and practical problems associated with the equal protection class-of-one claim, the Supreme Court recently addressed the class-of-one theory in the public employer context. *See Enquist v. Oregon Dep't of Agriculture*, 128 S.Ct. 2146 (2008). In *Enquist*, the Supreme Court reasoned that *Olech* was more an application of the Equal Protection Clause's guarantee of freedom from arbitrary government classification than an exception to the requirement for suspect classification. *See Enquist*, 128 S.Ct. at 2153. The Supreme Court held that the core concerns of the Equal Protection Clause are not implicated in disputes inherently circumscribed by the discretionary exercise of the state's authority to fire an employee. *Id.* at

4

2153-57 (holding the class-of-one theory does not apply in the public employment context).  The reasoning in *Enquist* fully applies to eliminate the application of the class-of-one theory to a warrantless arrest.[1]

## SUMMARY OF ARGUMENT

Plaintiff's class-of-one claim haphazardly recites equal protection language and is nothing but a challenge to the legitimacy of his arrest for a criminal violation.  In the absence of an alleged suspect classification, the core concern of the Equal Protection Clause to "shield against arbitrary classifications" is not implicated in the warrantless arrest context.[2]  The exercise of state authority to make an arrest is an inherently discretionary act necessarily contingent upon a "vast array" of subjective circumstances and highly contextual determinations by police officers.  *See e.g. Enquist*, 128 S.Ct. at 2153-54.  *See also Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994) (addressing probable cause to arrest and noting "[i]n recognition of the *endless scenarios confronting police officers in their daily regimen*, courts evaluate probable cause 'not on the facts as an omniscient observer would perceive them, but on the facts as they would have appeared to a reasonable person in the position of the arresting officer – seeing what he saw, hearing what he heard.'") (emphasis added) (citations omitted).  Given the subjective, contextual decision-making inherent in every arrest, there are no set of circumstances sufficiently similar to enable any meaningful equal protection analysis.  *See Enquist*, 128 S.Ct. at 2154 ("allowing a challenge based on arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise").  As the Supreme Court has

---

[1] A copy of the decision is attached to this motion as Exhibit A.
[2] This is the arena of the Fourth Amendment.  Moreover, nothing prevents Plaintiff from alleging he is a member of a suspect class or pursuing a claim under 42 U.S.C. § 1985.  Of course, like any allegation, it would necessarily require a good faith basis to set forth such a claim.  *See* Fed. R. Civ. P. 11.

stated "[i]t is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized." *Id.*

Further, Plaintiff's alleged class-of-one claim forces the City of Chicago to "defend a multitude of such claims in the first place" and forces the Court "to sort through them in a search for the proverbial needle in a haystack." *Id.* at 2157. *See also Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005) ("[if] unexplained or unjustified disparity in treatment by public officials is therefore to be deemed a prima facie denial of equal protection, endless vistas of federal liability are opened.").

Allowing Plaintiff's equal protection claim to go forward creates the same "practical problem" the Supreme Court foreclosed in the public employer context. *See Enquist*, 128 S.Ct. at 2157. Indeed, Plaintiff's challenge to the alleged difference in treatment lacks any "clear standard" at all to which the state action may be compared. Plaintiff's equal protection claim is entirely predicated upon the factual circumstances relating to his seizure. Moreover, Plaintiff's entire Complaint alleges the "DEFENDANT OFFICERS" acted at all times under color of law and in the scope and course of their employment as police officers. As such, whatever the treatment afforded to Plaintiff in comparison to the treatment afforded to others may at the very least be "hypothesized" to be rationally related to the legitimate state interest in enforcing criminal laws. *See McCollum*, 424 F.3d at 634 (a class-of-one claim fails unless it can "negative any reasonably conceivable state of facts that could provide a rational basis for the classification.") (citations and internal quotations omitted). For these reasons, Count VI of the complaint fails as a matter of law and should be dismissed.

In the alternative, Plaintiff should be required to set forth a more definite statement as to the particulars of his equal protection class-of-one claim. The complaint simply tracks the

operative language associated with class-of-one claims and offers no meaningful insight as to the nature or basis for the equal protection claim. Because the complaint fails to provide the Defendant Officers with "fair notice of what...the claim is and the grounds upon which it rests," it should be dismissed. *See Bell Atlantic Corp. V. Twombly,* 127 S.Ct. 1955, 1964-65, *quoting Conley v. Gibson,* 355 U.S. 41, 47 (1957) (stating "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but plaintiff must make sufficient "factual allegations...to raise [his] right to relief above the speculative level").

## ARGUMENT

### I.     THE CORE CONCERNS OF THE EQUAL PROTECTION CLAUSE ARE NOT IMPLICATED BY A WARRANTLESS ARREST

Plaintiff's complaint arises from an arrestee. Plaintiff's entire claim is at bottom a challenge to his seizure or, as the Supreme Court stated, a challenge "to the legitimacy of the underlying action itself...". *See Enquist*, 128 S.Ct. at 2154. In this regard, the core concern of the Equal Protection Clause to "shield against arbitrary classifications" in administrative and regulatory acts is not implicated. The Supreme Court makes clear that absent a suspect classification, the Equal Protection Clause is not concerned with the subjective, individualized determinations of state actors in their decision to exercise discretionary authority. *See Enquist*, 128 S.Ct. at 2154-55. Indeed, the Constitution envisions differential treatment in the exercise of the discretionary power to search and seize:

> [t]here are some forms of state action, however, which by their nature involve discretionary decision making based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Enquist*, 128 S.Ct. at 2154. The Court noted the inherent problems with employing equal

protection analysis in discretionary decision making, and illustrated these difficulties by way of

analogy to a police officer's issuing traffic tickets. *See id.*

The same logic applies here. Like the issuance of a traffic ticket, the power to arrest is an

inherently discretionary act. Hence the equal protection class-of-one theory has no rightful

application to Plaintiff's arrest. *See e.g. Enquist*, 128 S.Ct. 2154-55. S*ee also Sheik-Abdi v.*

*McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994) (addressing probable cause to arrest and noting

"[i]n recognition of the endless scenarios confronting police officers in their daily regimen,

courts evaluate probable cause 'not on the facts as an omniscient observer would perceive them,

but on the facts as they would have appeared to a reasonable person in the position of the

arresting officer – seeing what he saw, hearing what he heard.'") (citations omitted).

## II.   LEGITIMATE REASONS FOR ANY ALLEGED DIFFERENTIAL TREATMENT MAY EASILY BE HYPOTHESIZED

At bottom, this law suit questions the legitimacy of the application of the power of the

Defendant Officers to arrest Plaintiff. To even advance his equal protection class-of-one claim

into the discovery phase, Plaintiff must "negative any reasonably conceivable state of facts that

could provide a rational basis for the classification ... [such that] no sound reason for the action

can be hypothesized [and] ...the government action [is] wholly impossible to relate to legitimate

government objections." *Lauth v. McCollum*, 424 F.3d 631, 634 (7th Cir. 2005) (citations

omitted). Plaintiff's entire case appears to hinge on the notion that the "DEFENDANT

OFFICERS" conduct was designed to legitimize an allegedly unconstitutional arrest.[3] However,

Plaintiff cannot negative any reasonably conceivable state of facts that could provide a rational

basis for the complained of conduct. The entire case presupposes that this is an exercise in the

---

[3] Again, it is unclear from the hopelessly skeletal complaint with whom exactly Plaintiff finds fault regarding his seizure as opposed to conduct indirectly related to the seizure.

power to enforce criminal statutes and that such exercise was unconstitutionally unreasonable. Indeed, Plaintiff alleges the "DEFENDANT OFFICERS" acted at all times under color of law and in the scope and course of their employment as police officers." Complaint ¶¶ 3-4. Consequently, whatever treatment afforded to Plaintiff in comparison to the treatment afforded to others may at the very least be "hypothesized" to be rationally related to the legitimate state interest in enforcing criminal laws. *See McCollum*, 424 F.3d at 634 (a class-of-one claim fails unless it can "negative any reasonably conceivable state of facts that could provide a rational basis for the classification.") (citations and internal quotations omitted). This is because the facts and circumstances of each arrest, like a police officer's decision to issue a traffic citation, are by nature so particularized to that particular incident that, absent the presence of a protected class, it is impossible not to find a reason, even if only hypothetical, to rationally explain the difference in conduct between one arrest and another. Therefore, Plaintiff's class-of-one claim fails as a matter of law and must be dismissed.

### III.    PLAINTIFF'S CLASS-OF-ONE CLAIM CREATES UNTENABLE PRACTICAL PROBLEMS

A chief concern addressed in *Enquist* was the "practical problem" associated with litigating class-of-one claims over inherently discretionary decision making. The Supreme Court stated:

> The practical problem with allowing class-of-one claims to go forward in this context is not that it will be too easy for plaintiff's to prevail, but that governments will be forced to defend a multitude of such claims in the first place, and courts will be obliged to sort through them in a search for the proverbial needle in a haystack.

*Enquist*, 128 S.Ct. at 2157.

Plaintiff's challenge to the alleged difference in treatment lacks any "clear standard" at all to which the state action may be compared. Instead, it simply references "other individuals

involved in incidents with police officers that were not the victims of police misconduct and/or potential claimants against City of Chicago Police Officers." Complaint ¶ 17. In order to decide Plaintiff's class-of-one claim, then, the Court would be required to determine who among the thousands of persons arrested in Chicago each year is similarly situated to Plaintiff. In theory, this is every single person ever seized or arrested by any Chicago Police Officer in the history of the City of Chicago. Thus, the Court or jury would have to parse through every arrest to find the "proverbial needle in the haystack". Thus, the Court would have to parse through the interaction not only between each Defendant Officer and Plaintiff but every single individual ever arrested by any Chicago Police officer to determine whether there are sufficiently similar circumstances in any of those incidents related to this case. Then, the Court would have to compare the action of each Defendant Officer toward the Plaintiff to the similar interaction in those identified cases to determine whether there are any constitutionally significant differences in treatment. This is not the business of the Equal Protection Clause.

Further, the multitude of lawsuits the City of Chicago is being forced to defend is readily apparent. The following currently pending cases contain similar or virtually identical class-of-one claims[4]:

> ➢ Lewis, et al. v. City of Chicago, et al., 08 C 912 (J. Bucklo);
> ➢ Holden v. City of Chicago, et al, 07 C 932 (J. Kendall);
> ➢ Craft, et al. v. Flagg, 06 C 1451 (J. Gettleman);
> ➢ Alamo, et al. v. City of Chicago, et al., 08 C 766 (J. Andersen);
> ➢ Woodward v. City of Chicago, et al., 08 C 1495 (J. Coar);
> ➢ Trice v. City of Chicago, et al., 08 C 2387 (J. Lefkow);
> ➢ Bassett, et al. v. City of Chicago, et al., 08 C2640 (J. Gottschall);
> ➢ Naszke v. City of Chicago, et al., 08 C 3404 (J. St. Eve);
> ➢ Hall v. City of Chicago, et al., 08 C 2643 (J. Kennelly);
> ➢ Stewart v. City of Chicago, et al., 08 C 2631 (J. Shadur).

---

[4] Recently, Judge Castillo dismissed pursuant to a Rule 12(b)(6) motion a similar equal protection class-of-one claim in *Schor, et al. v. City of Chicago, et al.*, No. 07 C 7119, 2008 WL 2596456, (N.D. Ill. June 30, 2008) (J. Castillo), a copy of which is attached hereto as Exhibit B.

IV.    **PLAINTIFF SHOULD BE REQUIRED TO SUBMIT A MORE DEFINITE STATEMENT AS TO HIS EQUAL PROTECTION CLAIM UNDER RULE 12(e)**

Rule 12(e), in pertinent part, provides: "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e). As previously noted, the complaint fails to specify any specific conduct engaged by any particular defendant. Instead, Plaintiff simply alleges everything against "DEFENDANT OFFICERS." Rule 12(e) provides relief in these circumstances and, should this Court decline to dismiss Count VI, Plaintiff should at a minimum be required to submit a more definite statement as to his equal protection claim so as to allow the defendants to adequately respond and assert appropriate defenses.

**CONCLUSION**

For the foregoing reasons, Defendants Officers respectfully request that this Court dismiss Count VI of Plaintiff's Complaint with prejudice. In the alternative, Defendant Officers respectfully request this Court require Plaintiff to submit a more definite statement as to his equal protection claim and grant such other relief as the Court deems just and proper.

Respectfully submitted,

s/ Marc J. Boxerman
MARC J. BOXERMAN

Marc J. Boxerman
30 N. La Salle Street, Suite 1400
Chicago, Illinois 60602
(312) 744-7684
(312) 744-6566 (Fax)
Atty. No. 06215790

## CERTIFICATE OF SERVICE

I, Marc J. Boxerman, an attorney, certify that I have caused a true and correct copy of the above **Defendants Eric Eckhorn's and Gregorio Anderson's Motion to Dismiss Count VI of Plaintiff's Complaint or in the Alternative 12(E) Motion for More Definite Statement** to be sent via e-filing to the person named below, a "Filing User" pursuant to Case Management/Electronic Case Files, on August 11, 2008, in accordance with the rules governing the electronic filing of documents.

s/ Marc J. Boxerman
MARC J. BOXERMAN

Person served:

Blake Wolfe Horwitz
Horwitz, Richardson & Baker, LLC
20 S. Clark Street
Suite 500
Chicago, IL 60603

# EXHIBIT A

Westlaw.

--- S.Ct. ----                                                                                                    Page 1

--- S.Ct. ----, 2008 WL 2329768 (U.S.), 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922
**(Cite as: --- S.Ct. ----, 2008 WL 2329768 (U.S.))**

**H**

Engquist v. Oregon Dept. of Agriculture
U.S.,2008.
Only the Westlaw citation is currently available.
Supreme Court of the United States
Anup ENGQUIST, Petitioner,
v.
OREGON DEPARTMENT OF AGRICULTURE et
al.
No. 07-474.

Argued April 21, 2008.
Decided June 9, 2008.

**Background:** Former state employee, who had
been effectively laid off during reorganization of
employing agency, sued agency and individual em-
ployees, asserting various federal civil rights claims
including "class of one" equal protection claim,
which alleged that she had been fired for arbitrary,
vindictive and malicious reasons. The United States
District Court for the District of Oregon, Donald C.
Ashmanskas, United States Magistrate Judge,
entered judgment on jury verdict for employee on
class-of-one claim. The United States Court of Ap-
peals for the Ninth Circuit, 478 F.3d 985, reversed.
Certiorari was granted.

**Holding:**The United States Supreme Court, Chief
Justice Roberts, held that class-of-one equal protec-
tion claim is not cognizable in context of public
employment.

Affirmed.

Justice Stevens filed dissenting opinion joined by
Justices Souter and Ginsburg.

**[1] States 360 ⊂⊃53**

360 States
    360II Government and Officers
        360k53 k. Appointment or Employment and
Tenure of Agents and Employees in General. Most

Cited Cases
Constitutional review of state government's deal-
ings with citizen employees affords state greater
leeway than constitutional review of state in its ex-
ercise of regulatory or licensing power.

**[2] States 360 ⊂⊃53**

360 States
    360II Government and Officers
        360k53 k. Appointment or Employment and
Tenure of Agents and Employees in General. Most
Cited Cases
On constitutional review of state government's
dealings with citizen employees, court balances em-
ployees' constitutional rights against realities of
employment context by considering whether asser-
ted employee right implicates basic concerns of rel-
evant constitutional provision, or whether claimed
right can more readily give way to requirements of
government as employer.

**[3] Constitutional Law 92 ⊂⊃3057**

92 Constitutional Law
    92XXVI Equal Protection
        92XXVI(A) In General
            92XXVI(A)6 Levels of Scrutiny
                92k3052 Rational Basis Standard;
Reasonableness
                92k3057 k. Statutes and Other
Written Regulations and Rules. Most Cited Cases
Under Equal Protection Clause, when those who
appear similarly situated are nevertheless treated
differently by state legislation or regulation, there
must be rational reason for difference. U.S.C.A.
Const.Amend. 14.

**[4] Constitutional Law 92 ⊂⊃3593**

92 Constitutional Law
    92XXVI Equal Protection
        92XXVI(E) Particular Issues and Applica-
tions
            92XXVI(E)7 Labor, Employment, and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----                                                                                      Page 2

--- S.Ct. ----, 2008 WL 2329768 (U.S.), 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922
**(Cite as: --- S.Ct. ----, 2008 WL 2329768 (U.S.))**

Public Officials
      92k3592 Public Employees and Offi-
cials
          92k3593 k. In General. Most Cited
Cases

**Officers and Public Employees 283 €⇒66**

283 Officers and Public Employees
    283I Appointment, Qualification, and Tenure
      283I(G) Resignation, Suspension, or Remov-
al
          283k66 k. Grounds for Removal. Most
Cited Cases
"Class of one" equal protection claim, under which
plaintiff alleges that she has been treated differently
from other similarly situated persons without any
rational basis, but does not allege that differential
treatment was due to plaintiff's membership in par-
ticular class, is not cognizable in public employ-
ment context; employment decisions are often sub-
jective and individualized, and government employ-
ment, absent legislation, is at-will. U.S.C.A.
Const.Amend. 14.

*Syllabus*[FN*]

    FN* The syllabus constitutes no part of the
opinion of the Court but has been prepared
by the Reporter of Decisions for the con-
venience of the reader. See *United States v.
Detroit Timber & Lumber Co.,* 200 U.S.
321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

**\*1** Petitioner Engquist, an Oregon public employee,
filed suit against respondents-her agency, her su-
pervisor, and a co-worker-asserting, *inter alia,*
claims under the Equal Protection Clause: She al-
leged she had been discriminated against based on
her race, sex, and national origin, and she also
brought a so-called "class-of-one" claim, alleging
that she was fired not because she was a member of
an identified class (unlike her race, sex, and nation-
al origin claims), but simply for arbitrary, vindict-
ive, and malicious reasons. The jury rejected the
class-membership equal protection claims, but

found for Engquist on her class-of-one claim. The
Ninth Circuit reversed in relevant part. Although
recognizing that this Court had upheld a class-
of-one equal protection challenge to state legislat-
ive and regulatory action in *Village of Willowbrook
v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145
L.Ed.2d 1060, the court below emphasized that this
Court has routinely afforded government greater
leeway when it acts as employer rather than regu-
lator. The Court concluded that extending the class-
of-one theory to the public-employment context
would lead to undue judicial interference in state
employment practices and invalidate public at-will
employment.

*Held:* The class-of-one theory of equal protection
does not apply in the public employment context.
Pp. ---- - ----.

(a) There is a crucial difference between the gov-
ernment exercising "the power to regulate or li-
cense, as lawmaker," and acting "as proprietor, to
manage [its] internal operation."*Cafeteria & Res-
taurant Workers v. McElroy,* 367 U.S. 886, 896, 81
S.Ct. 1743, 6 L.Ed.2d 1230.Thus, in the public-
employment context, the Court has recognized that
government has significantly greater leeway in its
dealings with citizen employees than in bringing its
sovereign power to bear on citizens at large. See,
*e.g.,O'Connor v. Ortega,* 480 U.S. 709, 721-722,
107 S.Ct. 1492, 94 L.Ed.2d 714.The relevant pre-
cedent establishes two main principles: First, gov-
ernment employees do not lose their constitutional
rights when they go to work, but those rights must
be balanced against the realities of the employment
context. See, *e.g.,id..* at 721, 107 S.Ct.
1492.Second, in striking the appropriate balance,
the Court considers whether the claimed employee
right implicates the relevant constitutional provi-
sion's basic concerns, or whether the right can more
readily give way to the requirements of the govern-
ment as employer. See, *e.g., Connick v. Myers,* 461
U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708.Pp. ---- -
----.

(b) The Court's equal protection jurisprudence has

typically been concerned with governmental classifications that "affect some groups of citizens differently than others."*McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101.*Olech* did recognize that a class-of-one equal protection claim can in some circumstances be sustained. Its recognition of that theory, however, was not so much a departure from the principle that the Equal Protection Clause is concerned with arbitrary government classification, as it was an application of that principle to the facts in that case: The government singled Olech out with regard to its regulation of property, and the cases upon which the Court relied concerned property assessment and taxation schemes that were applied in a singular way to particular citizens. What seems to have been significant in *Olech* and the cited cases was the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed. This differential treatment raised a concern of arbitrary classification, and therefore required that the State provide a rational basis for it. There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases treating like individuals differently is an accepted consequence of the discretion granted to governmental officials. This principle applies most clearly in the employment context, where decisions are often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify. Unlike the context of arm's-length regulation, such as in *Olech,* treating seemingly similarly situated individuals differently in the employment context is par for the course. It is no proper challenge to what in its nature is a subjective and individualized decision that it was subjective and individualized. That the Court has never found the Equal Protection Clause implicated in this area is not surprising, given the historical understanding of the at-will nature of government employment. See, *e.g.,Cafeteria & Restaurant Workers v. McElroy,* 367 U.S. 886, 896, 81 S.Ct. 1743, 6 L.Ed.2d 1230.Recognition of a claim that the State treated an employee differently from others for a bad reason, or for no

reason at all, is simply contrary to the at-will concept. The Constitution does not require repudiating that familiar doctrine. Finally, the Court is guided, as in the past, by the "common-sense realization that government offices could not function if every employment decision became a constitutional matter."*Connick,supra,* at 143, 103 S.Ct. 1684.If class-of-one claims were recognized in the employment context, any personnel action in which a wronged employee can conjure up a claim of differential treatment would suddenly become the basis for a federal constitutional claim. The Equal Protection Clause does not require "[t]his displacement of managerial discretion by judicial supervision."*Garcetti v. Ceballos,* 547 U.S. 410, 423, 126 S.Ct. 1951, 164 L.Ed.2d 689.Pp. ---- - ----.

478 F.3d 985, affirmed.

**\*2** ROBERTS, C.J., delivered the opinion of the Court, in which SCALIA, KENNEDY, THOMAS, BREYER, and ALITO, JJ., joined.STEVENS, J., filed a dissenting opinion, in which SOUTER and GINSBURG, JJ., joined.

Neal Katyal, Washington, D.C., for petitioner.
Janet A. Metcalf, Salem, OR, for respondents.
Lisa S. Blatt, Washington, D.C., for the United States as amicus curiae, by special leave of the Court, supporting the respondents.
Virginia A. Seitz, Jeffrey T. Green, Quin M. Sorenson, Pankaj Venugopal, Sidley Austin LLP, Washington, D.C., Craig A. Crispin, Crispin Employment Lawyers, Portland, OR, Neal Katyal, Counsel of Record, Justin Florence, Matthew Gerke, Stephen I. Vladeck, Washington, D.C., David H. Remes, Jeffrey C. Wu, Covington & Burling LLP, Washington, D.C., Sarah O'Rourke Schrup, Chicago, IL, for Petitioner.
Hardy Myers, Attorney General of Oregon, Peter Shepherd, Deputy Attorney General, Counsel of Record, Mary H. Williams, Solicitor General, Janet A. Metcalf, Assistant Attorney General, Salem, Oregon, for Respondents.For U.S. Supreme Court briefs, see:2008 WL 467892 (Pet.Brief)2008 WL 795157 (Resp.Brief)2008 WL 1721900

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----
--- S.Ct. ----, 2008 WL 2329768 (U.S.), 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922
**(Cite as: --- S.Ct. ----, 2008 WL 2329768 (U.S.))**

(Reply.Brief)

Chief Justice ROBERTS delivered the opinion of the Court.

The question in this case is whether a public employee can state a claim under the Equal Protection Clause by alleging that she was arbitrarily treated differently from other similarly situated employees, with no assertion that the different treatment was based on the employee's membership in any particular class. We hold that such a "class-of-one" theory of equal protection has no place in the public employment context.

I

Anup Engquist, the petitioner in this case, was hired in 1992 by Norma Corristan to be an international food standard specialist for the Export Service Center (ESC), a laboratory within the Oregon Department of Agriculture (ODA). During the course of her employment, Engquist experienced repeated problems with Joseph Hyatt, another ODA employee, complaining to Corristan that he had made false statements about her and otherwise made her life difficult. Corristan responded by directing Hyatt to attend diversity and anger management training.

In 2001, John Szczepanski, an assistant director of ODA, assumed responsibility over ESC, supervising Corristan, Hyatt, and Engquist. Szczepanski told a client that he could not "control" Engquist, and that Engquist and Corristan "would be gotten rid of." When Engquist and Hyatt both applied for a vacant managerial post within ESC, Szczepanski chose Hyatt despite Engquist's greater experience in the relevant field. Later that year, during a round of across-the-board budget cuts in Oregon, Szczepanski eliminated Corristan's position. Finally, on January 31, 2002, Engquist was informed that her position was being eliminated because of reorganization. Engquist's collective-bargaining agreement gave her the opportunity either to "bump" to another position at her level, or to take a demotion. She was found unqualified for the only other position at

her level and declined a demotion, and was therefore effectively laid off.

Engquist subsequently brought suit in the United States District Court for the District of Oregon against ODA, Szczepanski, and Hyatt, all respondents here, alleging violations of federal antidiscrimination statutes, the Equal Protection and Due Process Clauses of the Fourteenth Amendment, and state law. As to Engquist's equal protection claim, she alleged that the defendants discriminated against her on the basis of her race, sex, and national origin. She also brought what is known as a "class-of-one" equal protection claim, alleging that she was fired not because she was a member of an identified class (unlike her race, sex, and national origin claims), but simply for "arbitrary, vindictive, and malicious reasons." App. 10.

*3 The District Court granted the respondents' motion for summary judgment as to some of Engquist's claims, but allowed others to go forward, including each of the equal protection claims. As relevant to this case, the District Court found Engquist's class-of-one equal protection claim legally viable, deciding that the class-of-one theory was fully applicable in the employment context. Civ. No. 02-1637-AS (D.Ore., Sept. 14, 2004), App. 58, 2004 WL 2066748, *5. The court held that Engquist could succeed on that theory if she could prove "that she was singled out as a result of animosity on the part of Hyatt and Szczepanski"-*i.e.,*"that their actions were spiteful efforts to punish her for reasons unrelated to any legitimate state objective"-and if she could demonstrate, on the basis of that animosity, that "she was treated differently than others who were similarly situated."*Ibid.*

The jury rejected Engquist's claims of discrimination for membership in a suspect class-her race, sex, and national origin claims-but found in her favor on the class-of-one claim. Specifically, the jury found that Hyatt and Szczepanski "intentionally treat[ed] [Engquist] differently than others similarly situated with respect to the denial of her promotion,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----                                                                                        Page 5
--- S.Ct. ----, 2008 WL 2329768 (U.S.), 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922
**(Cite as: --- S.Ct. ----, 2008 WL 2329768 (U.S.))**

termination of her employment, or denial of bumping rights without any rational basis and solely for arbitrary, vindictive or malicious reasons."App. to Pet. for Cert. 3-4. The jury also found for Engquist on several of her other claims, and awarded her $175,000 in compensatory damages and $250,000 in punitive damages.

The Court of Appeals reversed in relevant part. It recognized that this Court had upheld a class-of-one equal protection challenge to state legislative and regulatory action in *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) *(per curiam).*478 F.3d 985, 992-993 (C.A.9 2007). The court below also acknowledged that other Circuits had applied *Olech* in the public employment context, *id.,* at 993 (citing cases), but it disagreed with those courts on the ground that our cases have routinely afforded government greater leeway when it acts as employer rather than regulator, *id.,* at 993-996.The court concluded that extending the class-of-one theory of equal protection to the public employment context would lead to undue judicial interference in state employment practices and "completely invalidate the practice of public at-will employment."*Id.,* at 995.The court accordingly held that the class-of-one theory is "inapplicable to decisions made by public employers with regard to their employees."*Id.,* at 996.

Judge Reinhardt dissented, "agree[ing] with the other circuits that the class-of-one theory of equal protection is applicable to public employment decisions."*Id.,* at 1010.We granted certiorari to resolve this disagreement in the lower courts, 552 U.S. ----, 128 S.Ct. 977, 169 L.Ed.2d 800 (2008), and now affirm.

## II

**\*4** Engquist argues that the Equal Protection Clause forbids public employers from irrationally treating one employee differently from others similarly situated, regardless of whether the different treatment is based on the employee's membership in a particular class. She reasons that in *Olech,supra,* we recognized in the regulatory context a similar class-of-one theory of equal protection, Brief for Petitioner 14-15; that the Equal Protection Clause protects individuals, not classes, *id.,* at 15-17; that the Clause proscribes "discrimination arising not only from a legislative act but also from the conduct of an administrative official,"*id.,* at 17; and that the Constitution applies to the State not only when it acts as regulator, but also when it acts as employer, *id.,* at 23-29.Thus, Engquist concludes that class-of-one claims can be brought against public employers just as against any other state actors, *id.,* at 29-32, and that differential treatment of government employees-even when not based on membership in a class or group-violates the Equal Protection Clause unless supported by a rational basis, *id.,* at 32, 39-45.

We do not quarrel with the premises of Engquist's argument. It is well settled that the Equal Protection Clause "protect[s] persons, not groups," *Adarand Constructors, Inc. v. Peña,* 515 U.S. 200, 227, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995) (emphasis omitted), and that the Clause's protections apply to administrative as well as legislative acts, see, *e.g., Raymond v. Chicago Union Traction Co.,* 207 U.S. 20, 35-36, 28 S.Ct. 7, 52 L.Ed. 78 (1907). It is equally well settled that States do not escape the strictures of the Equal Protection Clause in their role as employers. See, *e.g.,New York City Transit Authority v. Beazer,* 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979); *Harrah Independent School Dist. v. Martin,* 440 U.S. 194, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979) *(per curiam)*; *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) *(per curiam).* We do not, however, agree that Engquist's conclusion follows from these premises. Our traditional view of the core concern of the Equal Protection Clause as a shield against arbitrary classifications, combined with unique considerations applicable when the government acts as employer as opposed to sovereign, lead us to conclude that the class-of-one theory of equal protection does not apply in the public

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

employment context.

## A

*5 [1] We have long held the view that there is a crucial difference, with respect to constitutional analysis, between the government exercising "the power to regulate or license, as lawmaker," and the government acting "as proprietor, to manage [its] internal operation."*Cafeteria & Restaurant Workers v. McElroy,* 367 U.S. 886, 896, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). This distinction has been particularly clear in our review of state action in the context of public employment. Thus, "the government as employer indeed has far broader powers than does the government as sovereign."*Waters v. Churchill,* 511 U.S. 661, 671, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (plurality opinion)."[T]he extra power the government has in this area comes from the nature of the government's mission as employer. Government agencies are charged by law with doing particular tasks. Agencies hire employees to help do those tasks as effectively and efficiently as possible."*Id.,* at 674-675, 114 S.Ct. 1878.See also *Connick v. Myers,* 461 U.S. 138, 150-151, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) (explaining that the government has a legitimate interest "in 'promot[ing] efficiency and integrity in the discharge of official duties, and [in] maintain[ing] proper discipline in the public service' " (quoting *Ex parte Curtis,* 106 U.S. 371, 373, 1 S.Ct. 381, 27 L.Ed. 232 (1882) (alterations in original)))."The government's interest in achieving its goals as effectively and efficiently as possible is elevated from a relatively subordinate interest when it acts as sovereign to a significant one when it acts as employer."*Waters,supra,* at 675, 114 S.Ct. 1878 (plurality opinion). Given the "common-sense realization that government offices could not function if every employment decision became a constitutional matter,"*Connick,supra,* at 143, 103 S.Ct. 1684,"constitutional review of government employment decisions must rest on different principles than review of ... restraints imposed by the government as sovereign,"*Waters,supra,* at 674, 114 S.Ct.

1878 (plurality opinion).

In light of these basic principles, we have often recognized that government has significantly greater leeway in its dealings with citizen employees than it does when it brings its sovereign power to bear on citizens at large. Thus, for example, we have held that the Fourth Amendment does not require public employers to obtain warrants before conducting a search of an employee's office. *O'Connor v. Ortega,* 480 U.S. 709, 721-722, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987) (plurality opinion). See also *id.,* at 732, 107 S.Ct. 1492 (SCALIA, J., concurring in judgment). Although we recognized that the "legitimate privacy interests of public employees in the private objects they bring to the workplace may be substantial," we found that "[a]gainst these privacy interests ... must be balanced the realities of the workplace, which strongly suggest that a warrant requirement would be unworkable."*Id.,* at 721, 107 S.Ct. 1492 (plurality opinion). We have also found that the Due Process Clause does not protect a public employee from discharge, even when such discharge was mistaken or unreasonable. See *Bishop v. Wood,* 426 U.S. 341, 350, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) ("The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions").

Our public-employee speech cases are particularly instructive. In *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), we explained that, in analyzing a claim that a public employee was deprived of First Amendment rights by her employer, we must seek "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."

*6 We analyzed the contours of this balance more fully in *Connick v. Myers, supra.*We explained that the First Amendment protects public-employee

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

speech only when it falls within the core of First Amendment protection-speech on matters of public concern. We recognized that the " 'First Amendment does not protect speech and assembly only to the extent it can be characterized as political,' " and that the government therefore could not generally prohibit or punish, in its capacity as sovereign, speech on the ground that it does not touch upon matters of public concern, *id.,* at 147, 103 S.Ct. 1684 (quoting *Mine Workers v. Illinois Bar Assn.,* 389 U.S. 217, 223, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967)). But "[w]hen employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices."*Connick,* 461 U.S., at 146, 103 S.Ct. 1684.As we explained, "absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior."*Id.,* at 147, 103 S.Ct. 1684 (citing *Bishop, supra,* at 349-350, 96 S.Ct. 2074).

[2] Our precedent in the public-employee context therefore establishes two main principles: First, although government employees do not lose their constitutional rights when they accept their positions, those rights must be balanced against the realities of the employment context. Second, in striking the appropriate balance, we consider whether the asserted employee right implicates the basic concerns of the relevant constitutional provision, or whether the claimed right can more readily give way to the requirements of the government as employer. With these principles in mind, we come to the question whether a class-of-one theory of equal protection is cognizable in the public employment context.

B

Our equal protection jurisprudence has typically been concerned with governmental classifications that "affect some groups of citizens differently than

others."*McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). See, *e.g., Ross v. Moffitt,* 417 U.S. 600, 609, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974) (" 'Equal Protection' ... emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable"); *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 60, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) (Stewart, J., concurring) ("[T]he basic concern of the Equal Protection Clause is with state legislation whose purpose or effect is to create discrete and objectively identifiable classes"). Plaintiffs in such cases generally allege that they have been arbitrarily classified as members of an "identifiable group." *Personnel Administrator of Mass. v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979).

Engquist correctly argues, however, that we recognized in *Olech* that an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called "class of one." In *Olech,* a property owner had asked the village of Willowbrook to connect her property to the municipal water supply. Although the village had required only a 15-foot easement from other property owners seeking access to the water supply, the village conditioned Olech's connection on a grant of a 33-foot easement. Olech sued the village, claiming that the village's requirement of an easement 18 feet longer than the norm violated the Equal Protection Clause. Although Olech had not alleged that the village had discriminated against her based on membership in an identifiable class, we held that her complaint stated a valid claim under the Equal Protection Clause because it alleged that she had "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."528 U.S., at 564, 120 S.Ct. 1073 (citing *Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923), and *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.,* 488 U.S. 336, 109 S.Ct.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----
--- S.Ct. ----, 2008 WL 2329768 (U.S.), 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922
**(Cite as: --- S.Ct. ----, 2008 WL 2329768 (U.S.))**

Page 8

633, 102 L.Ed.2d 688 (1989)).

\*7 [3] Recognition of the class-of-one theory of equal protection on the facts in *Olech* was not so much a departure from the principle that the Equal Protection Clause is concerned with arbitrary government classification, as it was an application of that principle. That case involved the government's regulation of property. Similarly, the cases upon which the Court in *Olech* relied concerned property assessment and taxation schemes. See *Allegheny Pittsburgh, supra*; *Sioux City Bridge, supra.* We expect such legislative or regulatory classifications to apply "without respect to persons," to borrow a phrase from the judicial oath. See 28 U.S.C. § 453. As we explained long ago, the Fourteenth Amendment "requires that all persons subjected to ... legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed." *Hayes v. Missouri,* 120 U.S. 68, 71-72, 7 S.Ct. 350, 30 L.Ed. 578 (1887). When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to assure that all persons subject to legislation or regulation are indeed being "treated alike, under like circumstances and conditions." Thus, when it appears that an individual is being singled out by the government, the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a "rational basis for the difference in treatment." *Olech,* 528 U.S., at 564, 120 S.Ct. 1073.

What seems to have been significant in *Olech* and the cases on which it relied was the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed. There was no indication in *Olech* that the zoning board was exercising discretionary authority based on subjective, individualized determinations-at least not with regard to easement length, however typical such determinations may be as a general zoning matter. See *id.,* at 565, 120 S.Ct. 1073 (BREYER, J., concurring in result). Rather, the complaint alleged that the board consistently required only a 15-foot easement, but subjected Olech to a 33-foot easement. This differential treatment raised a concern of arbitrary classification, and we therefore required that the State provide a rational basis for it.

\*8 In *Allegheny Pittsburgh,* cited by the *Olech* Court, the applicable standard was market value, but the county departed from that standard in basing some assessments on quite dated purchase prices. Again, there was no suggestion that the "dramatic differences in valuation" for similar property parcels, 488 U.S., at 341, 109 S.Ct. 633, were based on subjective considerations of the sort on which appraisers often rely, see *id.,* at 338-342, 345, 109 S.Ct. 633. *Sioux City Bridge,* also cited in *Olech,* was the same sort of case, recognizing an equal protection claim when one taxpayer's property was assessed at 100 percent of its value, while all other property was assessed at 55 percent, without regard to articulated differences in the properties. See 260 U.S., at 445-447, 43 S.Ct. 190.

[4] There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

Suppose, for example, that a traffic officer is stationed on a busy highway where people often drive above the speed limit, and there is no basis upon which to distinguish them. If the officer gives only one of those people a ticket, it may be good English to say that the officer has created a class of people that did not get speeding tickets, and a "class of one" that did. But assuming that it is in the nature of the particular government activity that not all

--- S.Ct. ----
--- S.Ct. ----, 2008 WL 2329768 (U.S.), 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922
(Cite as: --- S.Ct. ----, 2008 WL 2329768 (U.S.))

speeders can be stopped and ticketed, complaining that one has been singled out for no reason does not invoke the fear of improper government classification. Such a complaint, rather, challenges the legitimacy of the underlying action itself-the decision to ticket speeders under such circumstances. Of course, an allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns. But allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action. It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized.

This principle applies most clearly in the employment context, for employment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify. As Enquist herself points out, "[u]nlike the zoning official, the public employer often must take into account the individual personalities and interpersonal relationships of employees in the workplace. The close relationship between the employer and employee, and the varied needs and interests involved in the employment context, mean that considerations such as concerns over personality conflicts that would be unreasonable as grounds for 'arm's-length' government decisions (*e.g.,* zoning, licensing) may well justify different treatment of a public employee."Brief for Petitioner 48. Unlike the context of arm's-length regulation, such as in *Olech,* treating seemingly similarly situated individuals differently in the employment context is par for the course.

**\*9** Thus, the class-of-one theory of equal protection-which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review-is simply a poor fit in the public

employment context. To treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship. A challenge that one has been treated individually in this context, instead of like everyone else, is a challenge to the underlying nature of the government action.

Of course, that is not to say that the Equal Protection Clause, like other constitutional provisions, does not apply to public employers. Indeed, our cases make clear that the Equal Protection Clause is implicated when the government makes class-based decisions in the employment context, treating distinct groups of individuals categorically differently. See, *e.g.,Beazer,* 440 U.S., at 593, 99 S.Ct. 1355 (upholding city's exclusion of methadone users from employment under rational-basis review); *Martin,* 440 U.S., at 199-201, 99 S.Ct. 1062 (classification between teachers who had complied with a continuing-education requirement and those who had not is rational and does not violate the Equal Protection Clause); *Murgia,* 427 U.S., at 314-317, 96 S.Ct. 2562 (upholding a mandatory retirement age-a classification based on age-under rational-basis review). The dissent's broad statement that we "excep[t] state employees from the Fourteenth Amendment's protection against unequal and irrational treatment at the hands of the State,"*post,* at ---- (opinion of STEVENS, J.), is thus plainly not correct. But we have never found the Equal Protection Clause implicated in the specific circumstance where, as here, government employers are alleged to have made an individualized, subjective personnel decision in a seemingly arbitrary or irrational manner.

This is not surprising, given the historical understanding of the nature of government employment. We long ago recognized the "settled principle that government employment, in the absence of legislation, can be revoked at the will of the appointing officer."*McElroy,* 367 U.S., at 896, 81 S.Ct. 1743.The basic principle of at-will employment is

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----, 2008 WL 2329768 (U.S.), 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922
**(Cite as: --- S.Ct. ----, 2008 WL 2329768 (U.S.))**

that an employee may be terminated for a " 'good reason, bad reason, or no reason at all.' " Reply Brief for Petitioner 27. See *Andrews v. Louisville & Nashville R. Co.,* 406 U.S. 320, 324, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972) ("[T]he very concept of 'wrongful discharge' implies some sort of statutory or contractual standard that modifies the traditional common-law rule that a contract of employment is terminable by either party at will"). Thus, "[w]e have never held that it is a violation of the Constitution for a government employer to discharge an employee based on substantively incorrect information."*Waters,* 511 U.S., at 679, 114 S.Ct. 1878 (plurality opinion). See also *Connick,* 461 U.S., at 146-147, 103 S.Ct. 1684 ("[O]rdinary dismissals from government service ... are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable" (citing *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); and *Bishop,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684))."And an at-will government employee ... generally has no claim based on the Constitution at all."*Waters,supra,* at 679, 114 S.Ct. 1878 (plurality opinion). See, *e.g.,Bishop,supra,* at 349-350, 96 S.Ct. 2074.

**\*10** State employers cannot, of course, take personnel actions that would independently violate the Constitution. See *supra,* at ---- - ----.But recognition of a class-of-one theory of equal protection in the public employment context-that is, a claim that the State treated an employee differently from others for a bad reason, or for no reason at all-is simply contrary to the concept of at-will employment. The Constitution does not require repudiating that familiar doctrine.

To be sure, Congress and all the States have, for the most part, replaced at-will employment with various statutory schemes protecting public employees from discharge for impermissible reasons. See, *e.g.,*5 U.S.C. § 2302(b)(10) (2006 ed.) (supervisor of covered federal employee may not "discriminate

... on the basis of conduct which does not adversely affect the performance of the employee or applicant or the performance of others"). See also Brief for United States as *Amicus Curiae* 20-21. But a government's decision to limit the ability of public employers to fire at will is an act of legislative grace, not constitutional mandate.

Indeed, recognizing the sort of claim Engquist presses could jeopardize the delicate balance governments have struck between the rights of public employees and "the government's legitimate purpose in 'promot[ing] efficiency and integrity in the discharge of official duties, and [in] maintain[ing] proper discipline in the public service.'"*Connick,supra,* at 151, 103 S.Ct. 1684 (quoting *Ex parte Curtis,* 106 U.S., at 373, 1 S.Ct. 381; alterations in original). Thus, for example, although most federal employees are covered by the Civil Service Reform Act of 1978, Pub.L. 95-454, Congress has specifically excluded some groups of employees from its protection, see, *e.g.,*5 U.S.C. § 2302(a)(2)(C) (2006 ed.) (excluding from coverage, *inter alia,* the Federal Bureau of Investigation, the Central Intelligence Agency, and the Defense Intelligence Agency). Were we to find that the Equal Protection Clause subjects the Government to equal protection review for every allegedly arbitrary employment action, we will have undone Congress's (and the States') careful work.

**\*11** In concluding that the class-of-one theory of equal protection has no application in the public employment context-and that is all we decide-we are guided, as in the past, by the "common-sense realization that government offices could not function if every employment decision became a constitutional matter."*Connick,supra,* at 143, 103 S.Ct. 1684.If, as Engquist suggests, plaintiffs need not claim discrimination on the basis of membership in some class or group, but rather may argue only that they were treated by their employers worse than other employees similarly situated, any personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly be-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----, 2008 WL 2329768 (U.S.), 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922
**(Cite as: --- S.Ct. ----, 2008 WL 2329768 (U.S.))**

come the basis for a federal constitutional claim. Indeed, an allegation of arbitrary differential treatment could be made in nearly every instance of an assertedly wrongful employment action-not only hiring and firing decisions, but any personnel action, such as promotion, salary, or work assignments-on the theory that other employees were not treated wrongfully. See 478 F.3d, at 995.On Engquist's view, every one of these employment decisions by a government employer would become the basis for an equal protection complaint.

Engquist assures us that accepting her view would not pose too much of a practical problem. Specifically, Engquist argues that a plaintiff in a class-of-one employment case would have to prove that the government's differential treatment was intentional, that the plaintiff was treated differently from other similarly situated persons, and that the unequal treatment was not rationally related to a legitimate government purpose. Brief for Petitioner 36-39. And because a "governmental employment decision is ... rational whenever the discrimination relates to a legitimate government interest," it is in practice "difficult for plaintiffs to show that the government has failed to meet this standard."*Id.,* at 41.Justice STEVENS makes a similar argument, stating "that all but a handful [of class-of-one complaints] are dismissed well in advance of trial."*Post,* at ----.

We agree that, even if we accepted Engquist's claim, it would be difficult for a plaintiff to show that an employment decision is arbitrary. But this submission is beside the point. The practical problem with allowing class-of-one claims to go forward in this context is not that it will be too easy for plaintiffs to prevail, but that governments will be forced to defend a multitude of such claims in the first place, and courts will be obliged to sort through them in a search for the proverbial needle in a haystack. The Equal Protection Clause does not require "[t]his displacement of managerial discretion by judicial supervision."*Garcetti v. Ceballos,* 547 U.S. 410, 423, 126 S.Ct. 1951, 164 L.Ed.2d

689 (2006).

**\*12** In short, ratifying a class-of-one theory of equal protection in the context of public employment would impermissibly "constitutionalize the employee grievance." *Connick,* 461 U.S., at 154, 103 S.Ct. 1684."The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies."*Bishop,supra,* at 349, 96 S.Ct. 2074.Public employees typically have a variety of protections from just the sort of personnel actions about which Engquist complains, but the Equal Protection Clause is not one of them.

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

Justice STEVENS, with whom Justice SOUTER and Justice GINSBURG join, dissenting.
Congress has provided a judicial remedy for individuals whose federal constitutional rights are violated by state action, 42 U.S.C. § 1983.[FN1] In prior cases, we have refused to craft *new* remedies for the violation of constitutional rights of federal employees, *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), or for the nonconstitutional claims of state employees, *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). But refusal to give effect to the congressionally mandated remedy embodied in § 1983 would be impermissible. To avoid this result, the Court today concludes that Engquist suffered no constitutional violation at all, and that there was thus no harm to be remedied. In so holding, the Court-as it did in *Garcetti v. Ceballos,* 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006)-carves a novel exception out of state employees' constitutional rights. In *Garcetti,* the Court created a new substantive rule excepting a category of speech by state employees from the protection of the First Amendment. Today, the Court creates a new substantive rule excepting state employees from the Fourteenth Amendment's protection against unequal and irrational treatment at the hands of the State. Even if some surgery were

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

truly necessary to prevent governments from being forced to defend a multitude of **equalprotection** "**class** of **one**" claims, the Court should use a scalpel rather than a meat-axe.

> FN1.Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...."

I

**\*13** Our decision in *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)*(per curiam),* applied a rule that had been an accepted part of our equal protection jurisprudence for decades: Unless state action that intentionally singles out an individual, or a class of individuals, for adverse treatment is supported by some rational justification, it violates the Fourteenth Amendment's command that no State shall "deny to any person within its jurisdiction the equal protection of the laws."

Our opinion in *Olech* emphasized that the legal issue would have been the same whether the class consisted of one or five members, because "the number of individuals in a class is immaterial for equal protection analysis."*Id.,* at 564, 120 S.Ct. 1073, n. The outcome of that case was not determined by the size of the disadvantaged class, and the majority does not-indeed cannot-dispute the settled principle that the Equal Protection Clause protects persons, not groups. See *ante,* at ---- - ----.

Nor did the outcome in *Olech* turn on the fact that the Village was discriminating against a property owner rather than an employee. The majority does

not dispute that the strictures of the Equal Protection Clause apply to the States in their role as employers as well as regulators. See *ante,* at ----.And indeed, we have made clear that "the Equal Protection and Due Process Clauses of the Fourteenth Amendment, and other provisions of the Federal Constitution afford protection to employees who serve the government as well as to those who are served by them, and § 1983 provides a cause of action for all citizens injured by an abridgment of those protections."*Collins v. Harker Heights,* 503 U.S. 115, 119-120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

Rather, the outcome of *Olech* was dictated solely by the absence of a rational basis for the discrimination. As we explained:

> "Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. In so doing, we have explained that '[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'

> "[Olech's] complaint also alleged that the Village's demand was 'irrational and wholly arbitrary' .... These allegations, quite apart from the Village's subjective motivation, are sufficient to state a claim for relief under traditional equal protection analysis."528 U.S., at 564, 565, 120 S.Ct. 1073 (some internal quotation marks and citations omitted).

Here, as in *Olech,* Engquist alleged that the State's actions were arbitrary and irrational. In response, the State offered no explanation whatsoever for its decisions; it did not claim that Engquist was a subpar worker, or even that her personality made her a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----                                                                                    Page 13
--- S.Ct. ----, 2008 WL 2329768 (U.S.), 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922
**(Cite as: --- S.Ct. ----, 2008 WL 2329768 (U.S.))**

poor fit in the workplace or that her colleagues simply did not enjoy working with her. In fact, the State explicitly *disclaimed* the existence of any workplace or performance-based rationale.[FN2] *See, e.g.,* Reply Brief for Petitioner 17, 19. The jury proceeded to find that the respondents intentionally treated Engquist "differently than others similarly situated with respect to the ... termination of her employment ... without any rational basis and solely for arbitrary, vindictive or malicious reasons."App. to Pet. for Cert. 3-4. The jury's verdict thus established that there was no rational basis for either treating Engquist differently from other employees or for the termination of her employment. The State does not dispute this finding. Under our reasoning in *Olech,* the absence of any justification for the discrimination sufficed to establish the constitutional violation.

> FN2. But for this disclaimer, the lower court could have dismissed the claim if it discerned "any reasonably conceivable state of facts that could provide a rational basis for the [State's actions]," even one not put forth by the State. *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). The disclaimer, however, negated that possibility.

**\*14** The majority nonetheless concludes, based on "unique considerations applicable when the government acts as employer," that the "class of one" theory of equal protection is not applicable in the public employment context.*Ante,* at ----.Its conclusion is based upon speculation about inapt hypothetical cases, and an incorrect evaluation of the importance of the government's interest in preserving a regime of "at will" employment. Its reasoning is flawed on both counts.

## II

The majority asserts that public-employment decisions should be carved out of our equal protection jurisprudence because employment decisions (as opposed to, for example, zoning decisions) are inherently discretionary. I agree that employers must be free to exercise discretionary authority. But there is a clear distinction between an exercise of discretion and an arbitrary decision. A discretionary decision represents a choice of one among two or more rational alternatives. See 1 H. Hart & A. Sacks, The Legal Process: Basic Problems in the Making and Application of Law 162 (Tent. ed.1958) (defining discretion as "the power to choose between two or more courses of action each of which is thought of as permissible"). The choice may be mistaken or unwise without being irrational. If the arguments favoring each alternative are closely balanced, the need to make a choice may justify using a coin toss as a tie breaker. Moreover, the Equal Protection Clause proscribes arbitrary decisions-decisions unsupported by any rational basis-not unwise ones. Accordingly, a discretionary decision with any "reasonably conceivable" rational justification will not support an equal protection claim; only a truly arbitrary one will. There is therefore no need to create an exception for the public-employment context in order to prevent these discretionary decisions from giving rise equal protection claims.

The hypothetical situations posited by the majority do not prove otherwise. The hypothetical traffic officer described in the Court's opinion, *ante,* at ----, had a rational basis for giving a ticket to *every* speeder passing him on the highway. His inability to arrest every driver in sight provides an adequate justification for making a random choice from a group of equally guilty and equally accessible violators. As such, the Court is quite correct in stating that "allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action."*Ibid.* If there were no justification for the arrest, there would be no need to invoke the Equal Protection Clause because the officer's conduct would violate the Fourth

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----                                                                                                                          Page 14
--- S.Ct. ----, 2008 WL 2329768 (U.S.), 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922
**(Cite as: --- S.Ct. ----, 2008 WL 2329768 (U.S.))**

Amendment. But as noted, a random choice among rational alternatives does not violate the Equal Protection Clause.

**\*15** A comparable hypothetical decision in the employment context (*e.g.,* a supervisor who is required to eliminate one position due to an involuntary reduction-in-force and who chooses to terminate one of several equally culpable employees) also differs from the instant case insofar as it assumes the existence of a rational basis for the individual decision. The fact that a supervisor might not be able to explain why he terminated one employee rather than another will not give rise to an equal protection claim so long as there was a rational basis for the termination itself and for the decision to terminate just one, rather than all, of the culpable employees.

Instead of using a scalpel to confine so-called "class of one" claims to cases involving a complete absence of any conceivable rational basis for the adverse action and the differential treatment of the plaintiff, the Court adopts an unnecessarily broad rule that tolerates arbitrary and irrational decisions in the employment context.

### III

The majority's decision also rests on the premise that "[t]he Constitution does not require repudiating th[e] familiar doctrine" of at-will employment.*Ante,* at ----.In the 1890's that doctrine applied broadly to government employment, see *McAuliffe v. Mayor of New Bedford,* 155 Mass. 216, 29 N.E. 517 (1892), but for many years now " 'the theory that public employment which may be denied altogether may be subjected to any conditions, regardless of how unreasonable, has been uniformly rejected.'"*Keyishian v. Board of Regents of Univ. of State of N. Y.,* 385 U.S. 589, 605-606, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967). Indeed, recent constitutional decisions and statutory enactments have all but nullified the significance of the doctrine. See, *e.g.,Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Rutan v. Republican Party of Ill.,* 497 U.S.

62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); see also 5 U.S.C. § 2302(b)(10) (2006 ed.) (supervisor of covered federal employee may not "discriminate ... on the basis of conduct which does not adversely affect the performance of the employee or applicant or the performance of others"). Accordingly, preserving the remnants of "at-will" employment provides a feeble justification for creating a broad exception to a well-established category of constitutional protections.[FN3]

> FN3. Moreover, equal protection scrutiny is not incompatible with at-will employment since courts applying rational-basis scrutiny are able to rely on any *conceivable* reason for government action, and the government therefore need not explain its actual reason for terminating or disciplining the employee.

### IV

**\*16** Presumably the concern that actually motivates today's decision is fear that governments will be forced to defend against a multitude of "class of one" claims unless the Court wields its meat-axe forthwith. Experience demonstrates, however, that these claims are brought infrequently,[FN4] that the vast majority of such claims are asserted in complaints advancing other claims as well, and that all but a handful are dismissed well in advance of trial. Experience also demonstrates that there are in fact rare cases in which a petty tyrant has misused governmental power. Proof that such misuse was arbitrary because unsupported by any conceivable rational basis should suffice to establish a violation of the Equal Protection Clause without requiring its victim also to prove that the tyrant was motivated by a particular variety of class-based animus. When the allegations of a complaint plainly identify "the proverbial needle in a haystack,"*ante,* at ----, a federal court should not misconstrue the Constitution in order to make it even easier to dismiss unmeritorious claims.

> FN4. Prior to the Ninth Circuit's decision

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----                                                                                      Page 15
--- S.Ct. ----, 2008 WL 2329768 (U.S.), 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922
**(Cite as: --- S.Ct. ----, 2008 WL 2329768 (U.S.))**

this case, "class of one" claims arising in the public-employment context were permitted by every court that was presented with one. Yet there have been only approximately 150 cases-both in the district courts and the courts of appeals-addressing such claims since *Olech.*

\* \* \*

In sum, there is no compelling reason to carve arbitrary public-employment decisions out of the well-established category of equal protection violations when the familiar rational review standard can sufficiently limit these claims to only wholly unjustified employment actions. Accordingly, I respectfully dissent.

U.S.,2008.
Engquist v. Oregon Dept. of Agr.
--- S.Ct. ----, 2008 WL 2329768 (U.S.), 76 USLW 4367, 27 IER Cases 1121, 08 Cal. Daily Op. Serv. 6922

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 2596456 (N.D.Ill.)
**(Cite as: --- F.Supp.2d ----, 2008 WL 2596456 (N.D.Ill.))**

Page 1

Schor v. Daley
N.D.Ill.,2008.
Only the Westlaw citation is currently available.
    United States District Court,N.D. Illinois,Eastern
            Division.
    Gayle SCHOR, Kristine Mulcahy Angela Shue, In-
    dividually and On Behalf of All Others Similarly
                Situated, Plaintiffs,
                    v.
    Richard DALEY, Mayor, Officer Ramon Solidum,
    Unknown Officers, and the City of Chicago, De-
                fendants.
            **No. 07 C 7119.**

            June 30, 2008.

Blake Wolfe Horwitz, Horwitz, Richardson &
Baker, LLC, Chicago, IL, for Plaintiffs.
Rebecca Alfert, William Macy Aguiar, City of
Chicago, Chicago, IL, for Defendants.

    ***MEMORANDUM OPINION AND ORDER***

RUBEN CASTILLO, District Judge.
**\*1** Gayle Schor ("Schor"), Kristine Mulcahy
("Mulcahy"), and Angela Shue ("Shue"), on behalf
of themselves and a purported class of motor
vehicle operators within the City of Chicago (the
"City") who were ticketed for using a wireless tele-
phone without a "hands-free" device (collectively,
"Plaintiffs"), filed this suit against Mayor Richard
Daley ("Mayor Daley"), Officer Ramon Solidum
("Solidum"), Unknown Officers ("Officers"), and
the City of Chicago (the "City") (collectively,
"Defendants"). Plaintiffs were ticketed pursuant to
Chicago    municipal    ordinance    9-40-260
("Ordinance"), which Plaintiffs claim violates state
and federal law. (R. 15, Am.Compl.)

        ***RELEVANT FACTS***

The Chicago City Council passed the Ordinance on
May 11, 2005, and it took effect on July 8, 2005.

(R. 15, Am.Compl.¶¶ 9-10.) The Ordinance prohib-
its the use of a mobile telephone without the use of
a "hands free" device while operating a motor
vehicle. (*Id.* ¶ 12.)

As of September 2007, over 25,000 citations were
issued for violations of the Ordinance, resulting in
almost $2 million of City revenue. (*Id.* ¶
27.)Officer Solidum issued over 750 citations, rep-
resenting more than three percent of the total cita-
tions issued. (*Id.* ¶ 28.)

Between March 2006 and November 2007, Schor,
Mulcahy, and Shue were independently operating
motor vehicles in the City while using mobile tele-
phones without "hands free" devices, when they
were stopped and ticketed for violations of the Or-
dinance. (*Id.* ¶¶ 44-46, 50-52, 56-58.)Upon appear-
ing in Court, Schor's and Shue's traffic tickets were
dismissed. (*Id.* ¶¶ 48, 60.)Mulcahy paid the $75
fine attributable to the traffic citation.(*Id.* ¶ 54.)

In the Amended Complaint ("Complaint"),
Plaintiffs allege: (1) a Section 1983 claim for false
arrest; (2) false arrest under Illinois law; (3) mali-
cious prosecution under Illinois law; (4) a Section
1983 claim against Mayer Daley for allowing the
City to maintain a widespread policy of permitting
police officers to "falsely arrest" citizens under the
Ordinance; (5) a "*Monell* " claim; (6) a claim for
compensation from the City for any judgment ob-
tained against the Defendant Officers and/or Mayor
Daley; (7) a claim against the City based on *respon-
deat superior;* (8) a Section 1983 claim for viola-
tion of the Equal Protection clause; and (9) a claim
for declaratory and injunctive relief.

Currently before the Court is Defendants' joint mo-
tion to dismiss Plaintiffs' claims under Federal Rule
of Civil Procedure 12(b)(6). (R. 17, Mot. To Dis-
miss.) For the following reasons, the motion is
granted.

        ***LEGAL STANDARD***

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                          Page 2
--- F.Supp.2d ----, 2008 WL 2596456 (N.D.Ill.)
**(Cite as: --- F.Supp.2d ----, 2008 WL 2596456 (N.D.Ill.))**

In a ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded facts in the complaint as true, and draws all reasonable inferences from those facts in the plaintiff's favor. Fed.R.Civ.P. 12(b)(6); *Tamayo v. Blagojevich,* 526 F.3d 1074 (7th Cir.2008). To state a claim, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). To satisfy this standard, the allegations in the complaint must (1) describe the claim in sufficient detail to give the defendant "fair notice of what the ... claim is and the grounds upon which it rests;" and (2) "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level;' " *E.E.O.C. v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir.2007) (citing *Bell Atlantic Corp. v. Twombly,* ---U.S. ----, 127 S.Ct. 1955, 1964-65 (2007)).

### *ANALYSIS*

#### I. False Arrest

**\*2** In Counts I and II of the Complaint, Plaintiffs allege that they were falsely arrested pursuant to 42 U.S.C. § 1983 and Illinois state law because the Defendant police officers ticketed them without probable cause to believe that they had violated any law. (R. 15, Am.Compl.¶¶ 66, 69.) Defendants argue that Plaintiffs fail to state a claim for false arrest because: (1) Plaintiffs cannot show that they were, in fact, arrested; and (2) Plaintiffs cannot show that the police officers lacked probable cause to stop them and issue traffic citations. (R. 18, Mem. in Supp. of Mot. to Dismiss at 3-4.)

#### A. False Arrest under 42 U.S.C. § 1983

In general, a routine traffic stop does not constitute an arrest. *See United States v. Burns,* 37 F.3d 276, 280 (7th Cir.1994). Plaintiffs do not claim that the traffic tickets doled out constituted anything more than a routine traffic stop, and, accordingly,

Plaintiffs' "false arrest" claims should fail.

Reading the Complaint as a whole, however, Plaintiffs appear to be trying to state a more general claim, that the traffic stops at issue violated Plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures. "The law is settled that in Fourth Amendment terms a traffic stop entails a seizure of the driver even though the purpose of the stop is limited and the resulting detention quite brief." *Brendlin v. California,* ---U.S. ----, 127 S.Ct. 2400, 2406 (U.S.2007) (internal citations omitted). Nevertheless, a plaintiff cannot state a claim for violation of the Fourth Amendment where the officer had probable cause for the traffic stop. "A police officer has probable cause for a traffic stop when he has an objectively reasonable basis to believe a traffic law has been violated. Moreover, probable cause exists when the circumstances confronting an officer support the reasonable belief that a driver has committed even a minor traffic offense." *United States v. Hernandez-Rivas,* 513 F.3d 753, 758-59 (7th Cir.2008) (citing *United States v. Dowthard,* 500 F.3d 567, 569 (7th Cir.2007)).

Here, Plaintiffs' Fourth Amendment claim fails because the officers had probable cause to believe that Plaintiffs were violating the Ordinance: the officers observed Plaintiffs driving while using a mobile phone without a hands-free device. *See United States v. Figueroa-Espana,* 511 F.3d 696, 701 (7th Cir.2007) (finding that plaintiff could not challenge the constitutionality of a traffic stop where the officer observed that the vehicle was in violation of the traffic code). Indeed, Plaintiffs themselves concede that they were engaged in the prohibited activity-driving with a wireless telephone without the use of a "hands-free" device-when they were stopped. (R. 15, Am. Compl ¶¶ 44, 50, 56 .) Reliance on a presumptively valid ordinance, even if it is later ruled unconstitutional, provides probable cause for an arrest. *Doe v. Heck,* 327 F.3d 492, 516 (7th Cir.2003).

**\*3** Furthermore, even if Plaintiffs could state a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 2596456 (N.D.Ill.)
**(Cite as: --- F.Supp.2d ----, 2008 WL 2596456 (N.D.Ill.))**

Fourth Amendment claim against the officers, the officers would be entitled to qualified immunity. The Supreme Court has set forth a two-part test for determining whether a defendant is entitled to qualified immunity: "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendants violated a constitutional right; [and] (2) whether that constitutional right was clearly established at the time of the alleged violation." *Chelios v. Heavener,* 520 F.3d 678, 690 (7th Cir.2008) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). The Court has already concluded that the Defendant officers did not violate Plaintiffs' constitutional rights because the officers had probable cause to detain Plaintiffs for violating the Ordinance. Moreover, even if Plaintiffs could satisfy the first part of the test, the officers would be entitled to qualified immunity because the Ordinance has not been previously challenged, and there is nothing so "flagrantly unconstitutional" about the traffic Ordinance that would have alerted the Defendant officers to the possibility that the Ordinance is unenforceable. *Heck,* 327 F.3d at 516 ("[t]he enactment of a law forecloses speculation by enforcement officers concerning its constitutionality-with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws."). Accordingly, a reasonable officer would not have understood his actions to be unconstitutional under the Fourth Amendment, and thus the Defendant officers are entitled to qualified immunity. *Id.*

Therefore, Defendants' motion to dismiss Count I for failure to state a claim is granted.

**B. False Arrest under Illinois Law**

In order to establish false arrest under Illinois law, a plaintiff must prove that: (1) he was restrained or arrested by the defendants; and (2) the defendants acted without reasonable grounds to believe that the plaintiff committed an offense. *Meerbrey v. Marshall Field & Co., Inc.,* 564 N.E.2d 1222, 1231 (Ill.1990); *Johnson v. Target Stores, Inc.,* 791

N.E.2d 1206, 1219-20 (Ill.App.Ct.2003). Under Illinois law-as under federal law-a plaintiff cannot state a claim for false arrest stemming from a traffic stop where the officer had probable cause to believe that the driver of the vehicle had committed a traffic violation. *People v. Matous,* 886 N.E.2d 1278, 1283 (Ill.2008). As explained above, Plaintiffs concede that they were engaged in activity prohibited by the Ordinance when they were stopped. Therefore, for the reasons explained above, the officers had probable cause to make the traffic stops, and Plaintiffs fail to state a claim for false arrest under Illinois law.

Furthermore, the Court agrees with the Defendant officers that they are immune from suit pursuant to the Illinois Local Governmental Employees Tort Immunity Act ("Tort Immunity Act"), 745 ILCS § 10/1-101 *et seq.* "If a public employee acts in good faith, without malice, and under the apparent authority of an enactment that is unconstitutional, invalid or inapplicable, he is not liable for any injury caused thereby except for the extent that he would have been liable had the enactment been constitutional, valid and applicable." 745 ILCS § 10/2-203. The Tort Immunity Act shields the Defendant officers from liability for the state law false arrest claim for the same reasons that they are entitled to qualified immunity from the federal false arrest claim.

**\*4** Thus, Defendants' motion to dismiss the state law false arrest claim is granted.

**II. Malicious Prosecution**

In Count III, Plaintiffs allege that Schor and other similarly situated Plaintiffs were maliciously prosecuted under Illinois law. (R. 15, Am.Compl.¶¶ 71, 73, 74.) A plaintiff who files a malicious prosecution claim under Illinois law must show that: (1) the defendant instituted the underlying suit without probable cause and with malice; (2) the former action was terminated in the plaintiff's favor; and (3) the plaintiff suffered a special injury

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 2596456 (N.D.Ill.)
**(Cite as: --- F.Supp.2d ----, 2008 WL 2596456 (N.D.Ill.))**

Page 4

beyond the usual expense, time, or annoyance in defending the underlying action. *Howard v. Firmand,* 880 N.E.2d 1139 (Ill.App.Ct.2007) (citing *Miller v. Rosenberg,* 749 N.E.2d 946 (Ill.2001)). Probable cause is a complete defense to an action for malicious prosecution. *Id.* As explained above, the Defendant officers had probable cause to detain Plaintiffs because the Plaintiffs were committing a traffic violation. *Matous,* 886 N.E.2d at 1283. Thus, Plaintiffs cannot maintain an action for malicious prosecution against Defendants.[FN1]

> FN1. Moreover, Schor's claim is barred by the applicable statute of limitations. (R. 18, Mem. in Supp. of Mot. to Dismiss at 7.) Under the Tort Immunity Act, the applicable statute of limitations for a state law malicious prosecution claim against a local entity or its employees is one year. 745 ILCS § 10/8-101. Schor contends that she was stopped and detained by an unknown Chicago police officer on March 4, 2006. (R. 15, Am.Compl.¶¶ 44-45.) As Plaintiffs did not file their original complaint until December 19, 2007, Schor failed to bring her claim within the one-year statute of limitations.

Accordingly, Defendants' motion to dismiss Count III is granted.

### III. Liability Against Mayor Daley and the City of Chicago

In Counts IV and V, Plaintiffs seek to hold Mayor Daley and the City liable under 42 U.S.C. § 1983 for causing and participating in the deprivation of Plaintiffs' constitutional rights. (R. 15, Am.Compl.¶ 79.)

#### A. Individual Liability

While the Complaint alleges that the Mayor implemented policies and practices that violate the Constitution, Plaintiffs argue that they are suing Mayor Daley in his individual capacity only. (R. 28, Resp. to Defs.' Mot. to Dismiss at 6.) Municipal legislators are entitled to absolute immunity from suit under 42 U.S.C. § 1983 for their legislative activities. *Bogan v. Scott-Harris,* 523 U.S. 44, 49 (1998). Legislative activities include introducing, voting for, and signing legislation. *Nisenbaum v. Milwaukee County,* 333 F.3d 804, 808-09 (7th Cir.2003).

Here, Plaintiffs seek to hold Mayor Daley liable for authorizing, approving, and supporting the Ordinance's passage through the City Council and enforcement by Chicago police officers. (R. 28, Resp. to Defs.' Mot. to Dismiss at 7.) Under *Nisenbaum,* these are purely legislative functions for which Mayor Daley is entitled to absolute immunity. Accordingly, Plaintiffs' claims against Mayor Daley in his individual capacity fail.[FN2]

> FN2. Moreover, to the extent Plaintiffs attempt to allege that Mayor Daley personally supervised or directed officers to enforce the Ordinance, beyond his purely legislative functions, Mayor Daley would be entitled to qualified immunity on the same grounds as the individual police officers.

#### B. Monell Liability

In Count V, Plaintiffs allege that it is the custom, practice, and/or policy of the City to: "permit officers to falsely arrest and cite citizens for using a mobile telephone while operating a motor vehicle without a 'hands-free' device, in the absence of proper notice to the citizens;" and fail to "discipline," "properly investigate," "take proper remedial action" or "provide proper training" for these officers. (R. 15, Am.Compl.¶¶ 36, 84, 86.) A municipality can be found liable under Section 1983 if the municipality itself, through a municipal policy or custom, deprives someone of their constitutional rights. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978).

\*5 A municipality may not be held liable for a constitutional injury, however, unless there is a finding

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 2596456 (N.D.Ill.)
**(Cite as: --- F.Supp.2d ----, 2008 WL 2596456 (N.D.Ill.))**

that the individual officer is liable on the underlying substantive claim. *Treece v. Hochstetler,* 213 F.3d 360 (7th Cir.2000). In other words, if an officer has not violated an individual's constitutional rights, "it is inconceivable that [the city] could be liable."*City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986). As this Court has concluded that Plaintiffs fail to state a claim against the individual Defendants, neither the City nor Mayor Daley in his official capacity may be held liable for having a policy or practice of enforcing or turning a blind eye toward enforcement of the Ordinance. Thus, Plaintiffs' *Monell* claims fail.

### IV. Supervisory Liability

In Counts VI and VII, Plaintiffs seek to hold the City liable under the common law theory of *respondeat superior,* and as codified in 745 ILCS § 10/9-102. In these Counts, Plaintiffs allege that the City is liable for the substantive violations committed by the Defendant officers and Mayor Daley. (R. 15, Am.Comp.¶¶ 90, 92.) As set forth above, however, Plaintiffs have failed to state a claim against the individual Defendants or Mayor Daley. Consequently, Plaintiffs cannot state a claim for supervisory liability, or *respondeat superior,* and Counts VI and VII of the Complaint are dismissed. *See* 745 ILCS § 10/2-109 ("[a] local public entity is not liable for any injury resulting from an act or omission of its employee where the employee is not liable").

### V. Equal Protection "Class of One" Claim

The Complaint does not include Count VIII, but rather skips to Count IX, Plaintiffs' so-called " § 1983 equal protection 'class-of-one' claim."This claim is oxymoronic because Plaintiffs are attempting to bring their lawsuit on behalf of a class of similarly situated individuals. Presumably, Plaintiffs raise a "class of one" claim because they cannot show that they are a member of a protected class, as required for a traditional equal protection

claim. *See, e.g., Brown v. Budz,* 398 F.3d 904, 916 (7th Cir.2005) (to state an equal protection claim, the plaintiff must allege that he is a member of a protected class).

Alas, Plaintiffs' "class of one claim" fails. To state an equal protection "class of one" claim, a plaintiff must allege: (1) "that he has been intentionally treated differently from others similarly situated; and (2) that there is no rational basis for the difference in treatment or the cause of the differential treatment is a totally illegitimate animus toward the plaintiff by the defendant."*McDonald v. Village of Winnetka,* 371 F.3d 992, 1001 (7th Cir.2004) (internal citations and quotations omitted). Plaintiffs allege that they were treated differently from individuals who did not violate the Ordinance because they were ticketed, while non-violators were not ticketed. (R. 15, Am.Compl.¶¶ 98-100.) Plaintiffs contend that the non-violators were similarly situated to Plaintiffs because neither group violated any "effective" Ordinance. (*Id.*) The violation of the Ordinance, however, is exactly what makes these groups differently situated. Moreover, the Ordinance clearly provided the officers with a "rational basis" for treating Plaintiffs differently, as it gave the officers probable cause to ticket Plaintiffs. Thus, Plaintiffs' "class of one" equal protection claim fails as a matter of law, and Defendants' motion to dismiss this Count is granted.

### VI. Request for Injunctive and Declaratory Relief

*6 The final Count in Plaintiffs' Complaint is Count XI, as the Complaint skips Count X. In Count XI, Plaintiffs request an injunction declaring the practice of the City of arresting, detaining, ticketing, and prosecuting motor vehicle operators using a mobile telephone without a "hands free" device an unconstitutional violation of the Fourth Amendment; enjoining the City from issuing citations for violations of the Ordinance until signs providing notice of the Ordinance are posted; ordering the City to post signs providing notice of the Ordinance; ordering the City to immediately withdraw all

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 2596456 (N.D.Ill.)
**(Cite as: --- F.Supp.2d ----, 2008 WL 2596456 (N.D.Ill.))**

charges against any individual cited for violating the Ordinance; ordering the City to return all money collected from individuals cited under the Ordinance; and declaring that the Ordinance was not, is not, and will not be effective until proper signs are posted. (R. 15, Am.Compl.¶ 113.) Plaintiffs argue that the Illinois Vehicle Code, 625 ILCS § 5/11-207, requires the City to post signs notifying motor vehicle operators of the Ordinance, and that the Ordinance is not enforceable in the absence of these signs. (R. 15, Am.Compl.¶¶ 15-22.)

As the Court has already determined that Plaintiffs have not stated a claim for a Fourth Amendment violation in their Complaint, all that remains of their request for declaratory and injunctive relief is the interpretation of the relevant state and municipal laws; *i.e.,* the application of the Illinois Vehicle Code to the Chicago Ordinance. A district court may decline to exercise supplemental jurisdiction in any civil action over which it has original jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). When a state law claim is appended to a federal claim that confers original jurisdiction on the federal courts, "the sensible presumption [is] that if the federal claims drop out before trial, the district court should relinquish jurisdiction over the state law claims."*Williams Elec. Games, Inc. v. Garrity,* 479 F.3d 904, 907 (7th Cir.2007). Here, at the motion to dismiss stage with little discovery having occurred, the presumption in favor of relinquishing federal jurisdiction applies. Moreover, the remaining claim potentially raises new and complex issues of state and municipal law, which provides another ground for declining to exercise supplemental jurisdiction in this case. 28 U.S.C. § 1367(c)(1). Therefore, the Court declines to exercise supplemental jurisdiction over the remaining state law claim, and accordingly, dismisses this claim without prejudice.

### MOTION TO AMEND COMPLAINT

On June 6, 2008, months after the filing of Plaintiffs' initial and amended complaints, and weeks after the motion to dismiss was fully briefed, Plaintiffs filed a motion for leave to file a second amended complaint to add two new claims-that the Ordinance violates due process based on Plaintiffs' fundamental right to travel and that the Ordinance is void for vagueness-and to add a new Plaintiff, Joseph Fosco.[FN3] (R. 37, Mot. to Amend at 2.) On June 18, 2008, this Court denied Plaintiffs' motion in open court because Plaintiffs were dilatory in bringing the motion to amend and because amendment of the Complaint would be futile. (R. 40, 6/18/08 Min. Order.)

FN3. The motion to amend also seeks leave to correct typographical errors, specifically to properly renumber the Complaint sequentially to account for missing Counts. (R. 37, Mot. to Amend at 2.) Such amendment is unnecessary, however, as the Court has addressed each Count despite their inappropriate numbering.

**\*7** Under Federal Rule of Civil Procedure 15(a), after the first amendment, a party may amend their pleading only by leave of court, or with the opposing party's consent; the Rule provides that "leave shall be freely given when justice so requires."Fed.R.Civ.P. 15(a)."[A] request to allow the complaint to be amended is addressed to the judge's discretion."*Springman v. AIG Mktg., Inc.,* 523 F.3d 685, 690 (7th Cir.2008)."Although the rule reflects a liberal attitude towards the amendment of pleadings, courts in their sound discretion may deny a proposed amendment if the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice, or if the pleading is futile."*Campania Mgmt. Co. v. Rooks, Pitts & Poust,* 290 F.3d 843, 848-49 (7th Cir.2002).

This Court determined that Plaintiffs unduly delayed filing their motion to amend because the current motion to dismiss had been fully briefed for almost two months, and Plaintiffs already amended their complaint almost five months ago. Plaintiffs offer no excuse for the delay in bringing their mo-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 2596456 (N.D.Ill.)
**(Cite as: --- F.Supp.2d ----, 2008 WL 2596456 (N.D.Ill.))**

Page 7

tion. Indeed, it appears that Plaintiffs' reason for failing to seek leave to amend their complaint earlier in this litigation is that they "mistakenly or inadvertently failed to address everything in the original complaint, and failed to act with diligence."*Soltys v. Costello,* 520 F.3d 737, 743 (7th Cir.2008) (internal citations and quotations omitted). This does not satisfy the Rule 15 "when justice so requires" standard. *Id.*

In addition, Plaintiffs' proposed amendment to the Complaint would be futile. Amending a complaint would be futile if the amended claim would not survive a motion for summary judgment, or if the proposed amended complaint fails to satisfy the requirements of the Federal Rules. *See U.S. ex rel. Fowler v. Caremark RX, L.L.C.,* 496 F.3d 730, 740 (7th Cir.2007); *Sound of Music Co. v. Minnesota Min. & Mfg. Co.,* 477 F.3d 910, 923 (7th Cir.2007). Here, amendment would be futile because Plaintiffs would be unable to succeed on either their proposed due process or vagueness claims.

First, Plaintiffs' proposed claim for violation of their "substantive due process right to travel" cannot succeed. (R. 37, Mot. to Amend at 8.) As an initial matter, the Due Process Clause does not protect any "fundamental right to travel." *See Brown v. City of Michigan City, Indiana,* 462 F.3d 720, 732-33 (7th Cir.2006) (listing fundamental substantive due process rights). To find that a government action violates the requirements of substantive due process when no fundamental right is at stake, "it must be utterly lacking in rational justification. *Brown v. City of Michigan City, Indiana,* 462 F.3d 720, 733 (7th Cir.2006). Plaintiffs do not allege an utter lack of rational justification for the statute; indeed, this claim would fail because the justification for the Ordinance is clearly rational: the safety of people on the City's streets. Thus, this proposed amendment would be futile.

**\*8** Second, Plaintiffs' proposed claim that the Ordinance is void for vagueness would fail as well. Plaintiffs argue that the Ordinance does not give a person of ordinary intelligence fair notice of what conduct it forbids because it fails to sufficiently define the terms "hands-free" and "use" of a mobile phone. (R. 37, Mot. to Amend at 8-10.) "A party raising a facial challenge to a statute or regulation on vagueness grounds must demonstrate that the law is impermissibly vague in all of its applications."*Koutnik v. Brown,* 456 F.3d 777, 783 (7th Cir.2006) (internal citations and quotations omitted). The regulation "can be found to be impermissibly vague if it fails to define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and it fails to establish standards to permit enforcement in a nonarbitrary, nondiscriminatory manner."*Fuller ex rel. Fuller v. Decatur Public Sch. Bd. of Educ. Sch. Dist. 61,* 251 F.3d 662, 666 (7th Cir.2001). Plaintiffs' facial challenge to the Ordinance cannot meet this standard. In order to prevail, Plaintiffs "need to show that the rule is unconstitutional in all its applications, which would include its application to them.... A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."*Id.* at 667.As discussed above, Plaintiffs do not show that the Ordinance was enforced against them in an arbitrary or discriminatory way, nor do they propose to amend the complaint to include allegations that it was enforced against them in an arbitrary or discriminatory way. (*See* R. 37, Mot. to Amend at 10-12.) Plaintiffs' list of hypothetical definitions of "use" and "hands-free" does not move their claim out of the realm of futility. (R. 37, Mot. to Amend at 9-10.) Thus, for these reasons, Plaintiffs' motion for leave to amend is denied.

## *CONCLUSION*

For the reasons stated above, Defendants' motion to dismiss is granted (R. 17), and Plaintiffs' motion to amend their complaint (R. 37) is denied. All of Plaintiffs' claims are dismissed with prejudice, except for Plaintiffs' claim for injunctive and declaratory relief, which is dismissed without prejudice to its refiling in state court.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 2596456 (N.D.Ill.)
**(Cite as: --- F.Supp.2d ----, 2008 WL 2596456 (N.D.Ill.))**

N.D.Ill.,2008.
Schor v. Daley
--- F.Supp.2d ----, 2008 WL 2596456 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.